ROBERT S. BREWER, JR.
United States Attorney
AARON P. ARNZEN (CA Bar No. 218272)
ANDREW J. GALVIN (CA Bar No. 261925)
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8384 / 9721
Email: Aaron.Arnzen@usdoj.gov / Andrew.Galvin@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GANNON GIGUIERE (1),<br>OLIVER LINDSAY (2),<br><br>Defendants. | Case No.: 18CR3071-WQH<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT GIGUIERE'S MOTION TO COMPEL DISCOVERY AND RETURN PROPOERTY**<br><br>Date:  March 11, 2019<br>Time:  2:00 P.M.<br>Courtroom:  14-B<br><br>**HON. WILLIAM Q. HAYES** |

The UNITED STATES OF AMERICA, by and through its counsel Robert S. Brewer, Jr., United States Attorney, and Aaron P. Arnzen and Andrew J. Galvin, Assistant U.S. Attorneys, files this response in opposition to defendant Gannon Giguiere's motion to compel discovery and return property.

# I.

# INTRODUCTION

Defendant Gannon Giguiere has reimagined the scope of criminal discovery. He seeks to dispose of the prosecution team construct, and to obtain an order that the undersigned begin a search for "all documents" meeting certain broad descriptions in the entire "government's possession." Giguiere would go so far as to treat the prosecution

team and the entire United States Securities and Exchange Commission as one for purposes of discovery – never mind that the SEC is its own federal agency; has its own civil, administrative and regulatory dockets; and did not participate in the *criminal* prosecution of this case. The Court should not allow this. Giguiere's motions should be denied, unless otherwise noted below.

## II.
## STATEMENT OF RELEVANT FACTS

### A. The Fraudulent Schemes Alleged in the Indictment

On June 29, 2018, a grand jury impaneled in the Southern District of California handed down an indictment charging Defendants Gannon Giguiere and Oliver Lindsay for their participation in two securities fraud schemes. ECF No. 1. Those schemes involved manipulating the market for the stock of Kelvin Medical Corp. (ticker: KVMD) and Eco Science Solutions, Inc. (ticker: ESSI). The superseding indictment, handed down on January 25, 2019, alleges that Giguiere and Lindsay engaged in a market manipulation / pump-and-dump scheme surrounding KVMD stock by:

- Controlling the stock and important operations of KVMD. *Id.* at ¶ 23a, c, d.
- Concealing their control. *Id.* at ¶ 23b.
- Engaging in pre-arranged, coordinated trades to artificially increase the price and volume of KVMD stock. *Id.* at ¶ 23e-f.
- Hiring call-room operators to call securities brokers and convince the brokers to purchase KVMD stock in their clients' accounts. *Id.* at ¶ 23g.
- Changing KVMD's purported strategy and products. Prior to the conspirators' involvement, the company offered a hot/cold pack; afterwards, it purportedly had "evolved into an early stage telehealth wearable technology company," and "intend[ed] to leverage artificial intelligence and machine learning combined with the latest advancements in monitoring and therapeutic delivery technologies." *Id.* at ¶ 23h.

- Promoting KVMD and its stock on TheMoneyStreet.com, a stock promotion website controlled by Giguiere. *Id.* at ¶ 23i.
- Selling KVMD stock into the rising market to unsuspecting investors. *Id.* at ¶ 23k.

The superseding indictment also alleges that Giguiere (but not Lindsay) participated in a very similar scheme surrounding ESSI stock, which took place prior to the KVMD scheme. *Id.* at ¶¶ 29-37.

**B.   Michael Forster**

Michael Forster likely will be an important trial witness.  He has been involved in penny stock fraud for many years, and has had contact with any number of other repeat players in the industry.  According to Forster, since at least as early as 2016, he was involved in the promotion of stocks through TheMoneyStreet.com.  Forster and Giguiere paid for advertisements on websites like Yahoo Finance, where a click on the advertisements linked to a TheMoneyStreet.com landing page touting a particular stock.

Several market manipulation schemes in which Forster participated over the years have been investigated by various offices of the SEC and FBI.  As an example, Forster received a target letter in connection with a Northern District of Ohio criminal case (the "Cleveland Criminal Case,"), *see* DEPT. OF JUSTICE PRESS RELEASE, EIGHT PEOPLE SENTENCED TO PRISON FOR PENNY-STOCK FRAUD THAT RESULTED IN $39 MILLION LOSS TO INVESTORS, Jan. 31, 2017 (attached hereto as Ex. A), and an SEC civil case alleging overlapping facts, *see SEC v. Cope, et al.*, S.D.N.Y. Case No. 14CV7575 (the "New York SEC Case").  Forster did not provide information to investigators when they approached him with the target letter, and he ultimately did not face criminal or civil charges arising from that investigation.  The Cleveland Criminal Case went to trial against those who were indicted, after the United States Attorney's Office in that district produced hundreds of thousands of documents in discovery.

Except as described in this paragraph, none of the investigations of market manipulation schemes in which Forster participated led to Forster's cooperation, or to filed criminal or SEC charges against him. In 2017, the FBI's San Diego Field Office and this United States Attorney's Office investigated a suspected market manipulation scheme in the stock of Cuba Beverage Company. In August 2017, the United States Attorney's Office charged Forster in a sealed complaint with conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, for his role in a scheme relating to the 2012 manipulation of the market for Cuba Beverage stock. When approached by agents, Forster agreed to cooperate, the arrest warrant was not executed, and the complaint was later dismissed without prejudice. Forster entered into a cooperation and tolling agreement with the Government. He is cooperating with the investigation, and has recorded conversations and captured evidence of written communications with Giguiere and Lindsay regarding the manipulation of KVMD, which led to the indictment in this case.

Pursuant to his cooperation agreement, Forster also has provided assistance, and is currently providing assistance, proactively in the investigation of additional penny stock fraud schemes. In addition to the present case, two such schemes have been the subject of unsealed indictments – *United States v. Zouvas*, S.D. Cal. Case No. 18CR3070-JLS, and *United States v. Hackett, et al.*, S.D. Cal. Case No. 18CR3072-WQH. Evidence surrounding additional, current schemes is being developed and analyzed. Critically, none of Forster's ongoing proactive work involves wrongdoing on his part. Instead, Forster either has been introduced into ongoing penny stock fraud conspiracies and has gathered evidence for purposes of the related investigation, or, in the *Zouvas* case, he recorded calls that led to charges under the money laundering sting provision, 18 U.S.C. § 1956(a)(3)(B).

**C.     The Securities and Exchange Commission**

The SEC is a federal agency that polices the securities markets. According to its website at www.sec.gov, it is responsible for over 35,000 entities, including nearly 11,000 investment advisers, 9,700 mutual funds and ETFs, and 4,600 broker-dealers. It also reviews the disclosures and financial statements of more than 9,500 publicly-traded companies. Of its 4,200 employees, 1,344 work in the agency's Division of Enforcement. Enforcement staff members work out of the SEC's home office in Washington, D.C., and 11 Regional Offices throughout the country.

Two staff attorneys and an analyst in the SEC's New York Regional Office (collectively, the "Assigned NYRO Staff") were responsible for the SEC Division of Enforcement's investigation into the KVMD and ESSI schemes. One member of the Assigned NYRO Staff participated in the investigation that led to civil charges in the New York SEC Case, *i.e.*, Forster's prior misconduct. During the course of the SEC's investigation in the New York SEC Case, the Assigned NYRO Staff served an administrative subpoena on Forster, Forster objected, and the SEC filed a subpoena enforcement action in the Southern District of New York seeking compliance with a subpoena. Forster prevailed in the action. *See SEC v. Forster*, 147 F.Supp.3d 223 (S.D.N.Y. 2015).

The Assigned NYRO Staff and another small group of SEC staff members, this one based in the Los Angeles Regional Office (the "Assigned LARO Staff"), were responsible for the SEC's investigation of the Cuba Beverage market manipulation scheme, which was conducted in parallel with the United States Attorney's Office's investigation. No civil charges have been filed in that case. Forster entered into a tolling agreement surrounding the Cuba Beverage scheme with the SEC.

The FBI San Diego Field Office and United States Attorney's Office for this district have engaged in a number of proffer sessions with Forster. The Assigned NYRO Staff attended two of these sessions, and the Assigned LARO Staff attended one of them.

1 The Assigned NYRO Staff also attended proffer sessions with defendants in the *Hackett* case, and the Assigned LARO Staff attended proffer sessions with witnesses in the Cuba Beverage investigation. Members of the Assigned NYRO Staff and Assigned LARO Staff have confirmed that they did not take notes recording any statements by Forster, or any other witness, during these proffers.

The Assigned NYRO Staff filed a civil case against Giguiere, Lindsay, and others in this district on July 6, 2018. *SEC v. Giguiere, et al.*, 18CR1530-WQH. In that case, the SEC levelled civil charges against some, but not all, of the criminal defendants who are charged in two separate criminal indictments – the present case and the *Hackett* case. Specifically, Giguiere, Lindsay, Andrew Hackett, Annetta Budhu, Kevin Gillespie, Vikram Khanna, and Kuldeep Sidhu were criminally charged; the SEC decided, based on its independent analysis, to decline civil charges against Khanna and Sidhu. The Assigned NYRO Staff and the USAO/FBI shared certain evidence gathered during the investigation of KVMD and ESSI, but did not otherwise share resources or make decisions jointly regarding civil, criminal, or administrative charges. Nor did any SEC staff members become a Special Assistant United States Attorney ("SAUSA") in connection with this case, or play an active role in the prosecution, including conducting arrests, developing prosecutorial strategy, or participating in targeting discussions.

**D.    The ESSI Trading Suspension**

On May 19, 2017, the SEC announced a temporary suspension of trading in ESSI stock, *i.e.*, one of the stocks Giguiere and Lindsay manipulated, as alleged in the indictment. The SEC suspended ESSI trading at the time "because of concerns regarding the accuracy and adequacy of publicly disseminated information concerning, among others, ESSI's proposed acquisition of Ga-Du Bank, Inc." SEC Release No. 80737 (attached hereto as Ex. B). According to the Assigned NYRO Staff and Assigned LARO Staff, none of them conducted an investigation, or participated in the analysis or decision-making, that led to the ESSI trading suspension. The Assigned NYRO Staff began

investigating the ESSI market manipulation scheme as a result of evidence that was gathered after Forster began cooperating in August 2017.

### E. Giguiere's Discovery Requests

The Government received from Giguiere's attorneys a February 1, 2019 letter that included broad discovery requests. Many of the requests concerned Forster. Notably, (1) most the requests sought not just information regarding Forster, but dictated the form the information should take; and (2) called for "all documents" meeting certain descriptions "in the possession of the government." For example, Giguiere requested "any and all documents in the possession of the government regarding Forster's involvement in that alleged conspiracy [the Cleveland Criminal Case] and any contact the government had with Forster or any representatives of Forster in relation to that investigation."

The Government replied with a February 5, 2019 letter that responded to each request, and suggested a teleconference specifically to discuss some of the requests concerning Forster. Giguiere's attorneys and the Government discussed several issues by telephone on February 21, 2019. During that call, the Government agreed to return a cell phone that was seized at the time of his arrest (a warrant search was unsuccessful due to encryption issues); Giguiere's attorneys stated that they would follow up after further internal discussion, but did not do so. Giguiere's attorneys also voiced their disagreement with the Government's stated understanding of the scope of the prosecution team for discovery purposes in this case – the United States Attorney's Office for the Southern District of California and the FBI's San Diego Field Office – but did not present a clear counter-proposal.

### F. Discovery in this Case

The Government has produced, or will soon produce, all of the discovery required under the Constitution, Fed R. Crim. Proc. 16, and 18 U.S.C. § 3500. To date, the Government has produced over 250,000 pages of documents, including, *inter alia*, 10,600 pages obtained through grand jury subpoenas, and 8,800 pages of FBI reports, in addition

to recorded calls, emails and text messages, search warrant documents, seizure warrants, and other digital evidence.

When preparing for its production, the Government requested that the Assigned NYRO Staff provide a copy all materials that it collected in its investigation of the KVMD and ESSI schemes, and the Assigned NYRO Staff confirmed that it has done so. The Government has also made a very early start on its production of *Giglio* materials, particularly in relation to Michael Forster. For example, the Government has produced Forster's cooperation agreement; the criminal complaint, supporting affidavit, and the arrest warrant surrounding the Cuba Beverage scheme that led to his cooperation; and FBI reports of Forster's substantive statements to agents. The Government is also producing new materials as they are obtained including, primarily, materials returned pursuant to grand jury subpoenas that were issued before the superseding indictment was handed down, and materials that the Assigned NYRO Staff recently collected and shared with the Government.

In addition, the prosecution team is in possession of, and intends to quickly produce, two categories of materials that appear to be responsive to Giguiere's discovery requests. These include materials gathered by the prosecution team during the Cuba Beverage investigation; and materials that the undersigned understands are the three most significant pieces of evidence of Forster's involvement in the Cleveland Criminal Case (specifically, text messages, a recorded phone call, and a recorded in-person meeting between Forster and a cooperator in that case).

The prosecution does not have possession of, and therefore has not produced, materials gathered during the investigations of market manipulation schemes in which Forster participated over the years, as conducted by other SEC Enforcement staffers, FBI Field Offices, or United States Attorneys' Offices, including materials gathered during the investigations giving rise to the Cleveland Criminal Case and the New York SEC Case (aside from the three pieces of evidence described above).

# III.

# DISCUSSION

## A.  The Scope of the Prosecution Team

### 1.  The United States Attorney's Office and FBI San Diego Field Office

The FBI's San Diego Field Office and the United States Attorney's Office for the Southern District of California constitute the prosecution team in this case. Members of these two offices investigated and criminally charged the present criminal case and the *Hackett* case. The SEC conducted a parallel, but separate, investigation that led to its own civil case against Giguiere, Lindsay, and others. The Assigned NYRO Staff and the USAO/FBI shared evidence gathered during the investigation, but did not otherwise share resources. In addition, the United States Attorney's Office did not swear in an SEC SAUSA on the criminal investigation; and the SEC has not had broad access to grand jury materials. The USAO/FBI did not seek input from the SEC on its targeting decisions (or vice versa), and the criminal and civil charging decisions were certainly distinct (two individuals were charged criminally but not charged by the SEC).

### 2.  Giguiere's Unbounded Definition of the Prosecution Team

Giguiere imagines that an expansive definition of prosecution team should apply to justify his push for more evidence, most of which concerns Forster. Giguiere relies primarily on District Court orders in cases arising from much different facts. In *United States v. Bryan* (*see* Giguiere Motion at 4:9), for example, the Court found that the prosecution team may have extended beyond the local IRS office because the National Office of the IRS played a part in coordinating the investigation. 868 F.2d 1032, 1035-1036 (9th Cir. 1989). Here, in contrast, the ESSI and KVMD criminal investigation was conducted by the FBI and United States Attorney's Office. And under any analysis, the entire SEC – with its enormous regulatory and enforcement footprint – cannot be considered part of the prosecution team. If some part of the SEC was sufficiently involved to meet the applicable criteria (a conclusion with which the Governmnent

disagrees), it should be limited to the Assigned NYRO Staff, given the lack of evidence that the SEC's investigation of the ESSI and KVMD schemes was coordinated by the SEC Home Office, or by any SEC enforcement staff working on other investigations or in other SEC regional offices.

*United States v. Cutting* (*see* Giguiere Motion at 5:2) is also inapposite. There, a District Court in the Northern District of California found that the FDIC was part of the prosecution team. 2017 U.S. Dist. LEXIS 5006 at *17-22. But that conclusion was based on the fact that the FDIC "participated in over one hundred witness interviews to date in DOJ's investigation." *Id.* In addition, the court found "it highly significant that the prosecutor previously represented that the 'FDIC' was part of the prosecution team, without drawing any of the distinctions that the government now asserts." *Id.* Here, the SEC has participated in just a small handful of interviews with Forster and others, and the Government has certainly not identified the SEC as a part of the prosecution team.

Finally, while a District Court in the District of Montana was unpersuaded, over a decade ago, by the "prosecution team" construct in *United States v. Grace*, 401 F.Supp.2d 1069, 1078 (D. Mont. 2005) ("In my view, the law of the Ninth Circuit prohibits adoption of the flawed "prosecution team" idea.") (*see* Giguiere Motion at 5:7), that court's view is decidedly in the minority. *See, e.g.*, *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996) (noting that the prosecution team was not required to seek out allegedly exculpatory evidence in possession of Office of Thrift Supervision, the SEC, or the IRS when it had been unaware of the existence of that information because none of those agencies were part of the team that investigated the case); *United States v. Pelullo*, 399 F.3d 197 (3rd Cir 2005) (finding documents generated by the Pension and Welfare Benefits Administration of DOL in civil suit were not attributable to the prosecution team even though Department of Labor investigative agents were part of the prosecution team); *United States v. Norris*, 753 F.Supp.2d 492, 529 (E.D. Pa. 2010) (finding Antitrust Division did not violate Rule 16 or *Brady* by failing to turn over materials in the

possession of three of the foreign corporations with whom the Antitrust Division had plea agreements); *Blaczczak*, 308 F.Supp.3d 736, 742-43 (SDNY March 29, 2018) (denying motion for pretrial production of *Brady* materials and finding *Brady* doctrine did not apply to materials in possession of SEC even though SEC and USAO conducted 39 witness interviews together and the SEC regularly shared information it gather with the USAO); *United States v. Bonds*, 2014 U.S. Dist. Lexis 136469, at *16-19 (W.D. Wash. September 26, 2014) (noting that records in the possession of Child Protective Services and records from juvenile victims' schools not in "possession" of prosecution team because CPS and other government entities were not federal agencies participating in the same investigation of the defendant).

**B.    Reports of Interviews and Handwritten Notes**

Giguiere moves for the production of handwritten notes regarding witness statements. The motion should be denied.

As stated above, the FBI has conducted (and continues to conduct) interviews of various witnesses in this case. Agents took notes during the interviews to document the substance of what was said, and then created corresponding official reports of the interviews (FD-302s and FD-1023s). During the process of creating the official reports, the agents took measures to ensure that all material and relevant information – including information favorable to the defense – reflected in the notes is also reflected in the official reports.

The Government has produced the reports, but does not believe that it is required to produce the (usually handwritten) notes. *See, e.g.*, *United States v. Heine*, 314 F.R.D. 498, 515 (D. Or. 2016) (denying request for "agent's original notes from interviews conducted of witnesses concerning the transactions at issue in the Indictment," except for notes regarding defendant's own statements); *United States v. Salyer*, 271 F.R.D. 148, 160 (E.D. Cal. 2010) (finding that agent's notes "not be turned over at this time unless the district court orders otherwise as a case management tool"). Indeed, the law requires

more of Giguiere than his "mere speculation" that the notes contain something that is both material and not captured in the official reports. *See United States v. Liew*, 856 F.3d 585, 604 (9th Cir. 2017) ("While mere speculation about materials in the government's files does not require a court to make the materials available for defense inspection, Liew had more than mere speculation—he had the declaration of Spitler's [the witness's] attorney" identifying gaps in the subject reports). In sharp contrast to the defendant in *Liew*, Giguiere has presented no information whatsoever to suggest that material information in the notes didn't make its way into the reports.

Lastly, the Second Circuit did <u>not</u> overturn the conviction in *United States v. Triumph Capital Group, Inc.* (*see* Giguiere Motion at 6:12) simply because handwritten notes were not produced in discovery – rather, a *Brady* violation occurred because a specific set of unproduced (until after trial) handwritten notes contained information that was both exculpatory and impeaching. 544 F.3d 149, 163-64 (2nd Cir. 2008). Again, Giguiere points to nothing to suggest that the notes here contain otherwise unproduced exculpatory or impeaching information.

## C.  Information Concerning Michael Forster

Giguiere has moved for information concerning Forster that falls into the following categories. The Court should deny each of these motions.

### 1.  Prior Misconduct

The Government has produced, or will soon produce, all information concerning Forster's prior misconduct that is in the possession of the prosecution team. Giguiere's argument for access to additional materials largely rests on his untenably broad definition of the prosecution team for purposes of discovery. Based on the discussion set forth at Section III.A., *supra*, the prosecution team does not intend to collect and produce materials that are not in the possession of this United States Attorney's Office, the San Diego Field Office, or the Assigned NYRO Staff's materials in connection with the KVMD and ESSI schemes, unless ordered by the Court to do so.

## 2. Ongoing Cooperation

The Government's February 5, 2019 letter response to Giguiere's discovery requests, the fact section of this brief, and material that has been produced in discovery, provide significant information regarding Forster's ongoing cooperation with the Government's investigation. ***Giguiere therefore has, or will soon have, virtually all of the information required by the case upon which he relies*** – *U.S. v. Halgat*, 2014 U.S. Dist. LEXIS 55778 (D. Nev. Apr. 22, 2014) (*see* Giguiere Motion at 9:19-20). Specifically:

a. Forster has no criminal history except the Cuba Beverage criminal complaint that has been dismissed with prejudice.

b. Forster has participated with the Government in similar operations, including those involved in the *Hackett* and *Zouvas* case, and a limited number of additional investigations that are currently ongoing.

c. Forster began cooperation on August 18, 2017.

d. Forster was not incarcerated at the time he agreed to cooperate, but there was an outstanding warrant for his arrest.

e. The terms of the agreement surrounding Forster's cooperation are set forth in a cooperation agreement that was produced in discovery.

Giguiere could have only one real reason for seeking further information – to pressure the Government into dismissing this case so that it can pursue the investigations that are still underway. It is a rather transparent effort – the Court should not make it a successful one.

## 3. Communications between Forster and Case Agents

Giguiere moves for all communications between Forster and case agents. The motion should be denied as moot. The Government has provided all records made of communications between Forster and agents. It should be noted that agents have had many non-substantive communications with Forster – *e.g.*, Forster called agents to report

that a call had been recorded, agents called Forster to set up meetings or to give him instructions – and many of these communications were not recorded. Those communications that agents did record, whether by chart, log, or otherwise, have been produced in discovery.

Giguiere also moves for the production of certain emails from agents to the assigned Assistant United States Attorneys. Specifically, from time to time, agents sent emails to prosecutors summarizing the content of recorded calls with Mr. Giguiere or his co-conspirators.[1] Because the recordings, which have been produced in discovery, are accurate and evidence the calls themselves, and the emails represent only an agent's extremely quick take after a single listen to selected recordings, the emails should not be discoverable. And contrary to Giguiere's argument (*see* Giguiere motion at 11:23-26), the agent emails are certainly not admissible to cross-examine Forster, who had no role in deciding when to email prosecutors or what to put in the emails.

### 4. Proffer Notes Taken by SEC Staff

The Court should deny this motion as moot. As stated above, the Assigned NYRO Staff and Assigned LARO Staff have confirmed that they did not take notes during any of the proffer sessions in this investigation.

## D. Giguiere's Cell Phone

The Court should also deny this motion as moot. As stated above, on February 21, 2019, the Government agreed to return Giguiere's cell phone to his attorneys, but the attorneys never follow up as they indicated. The Government will bring the phone to the March 11, 2019 hearing to return it then.

---

[1] The Government offered to provide to Giguiere the agents' emails as a means to facilitate their review of discovery under something similar to a "line sheet" agreement, *i.e.*, that Giguiere may use such emails for discovery purposes, but not to examine or cross examine any witness, to impeach the credibility of any witness, to refresh the recollection of any witness, and/or as trial exhibits. Giguiere refused the offer.

## IV
## CONCLUSION

For the reasons stated above, the Court should deny defendant Gannon Giguiere's discovery motion, unless otherwise noted.

DATED:   March_4, 2019.                    Respectfully submitted,

ROBERT S. BREWER, JR.
United States Attorney

*/s/ Aaron P. Arnzen*

AARON P. ARNZEN
ANDREW J. GALVIN
Assistant U.S. Attorneys