ROBERT S. BREWER, JR.
United States Attorney
AARON P. ARNZEN (CA Bar No. 218272)
ANDREW J. GALVIN (CA Bar No. 261925)
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8384 / 9721
Email: Aaron.Arnzen@usdoj.gov / Andrew.Galvin@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GANNON GIGUIERE (1),<br>OLIVER LINDSAY (2),<br><br>Defendants. | Case No.: 18CR3071-WQH<br><br>**UNITED STATES' FIRST SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT GIGUIERE'S MOTION TO COMPEL DISCOVERY AND RETURN PROPERTY**<br><br>Date:         April 22, 2019<br>Time:         2:00 P.M.<br>Courtroom:  14-B<br><br>**HON. WILLIAM Q. HAYES** |

The UNITED STATES OF AMERICA, by and through its counsel Robert S. Brewer, Jr., United States Attorney, and Aaron P. Arnzen and Andrew J. Galvin, Assistant U.S. Attorneys, files this first supplemental brief in opposition to defendant Gannon Giguiere's motion to compel discovery and return property.

## I.
## INTRODUCTION

At the March 11, 2019 hearing on Giguiere's discovery motion, the Court ordered the United States to disclose additional information concerning this United States Attorney's Office's knowledge of cooperating witness Michael Forster's past and/or present wrongdoing, his proactive cooperation, and the United States' position on the

discoverability of information and materials related to these issues.  The United States' response to the Court's order is set forth below.

## II.

## FORSTER'S WRONGDOING AND COOPERATION

As stated in the United States' response in opposition to Giguiere's discovery motion, Forster has been involved in penny stock fraud for many years, and has had contact with a large number of other repeat players in the industry.  This United States Attorney's Office is aware of several categories of securities fraud-related schemes about which Forster knows or in which Forster participated.  As set forth in greater detail below, these include:

(1) Historical pump-and-dump / market manipulation schemes that Forster disclosed to agents.  These are described in Subsections A and B, below.

(2) Pump-and-dump / market manipulation schemes that were ongoing at around the time Forster began cooperating, and which involved Giguiere and/or his co-defendant, Oliver Lindsay.  The FBI's San Diego Field Office ("FBI-SD") gathered further information about these schemes, including through recorded conversations, texts and emails that Forster captured as part of his cooperation.  These are described in Subsection C, below.

(3) The "Cleveland Criminal Case," about which Forster was approached by agents in the FBI's Cleveland Field Office.  Forster declined to cooperate or provide information to investigators in that case, which is described in Subsection D, below.

(4) Cuba Beverage Company, which was the subject of a warrant out of this district for Forster's arrest. Forster agreed to cooperate and the warrant was not executed.  This case is also described in Subsection D, below.

(5) Schemes in which Forster engaged in no wrongdoing.  Forster had no connection with several schemes until he was introduced at the FBI's instruction in order

to gather evidence as part of Forster's proactive cooperation. This activity is described in Subsection E, below.

### A. Historical Pump-and-Dump / Market Manipulation Schemes – No Additional Evidence Gathered

The FBI has debriefed Forster on many occasions, as documented in FD-302 and FD-1023 reports, all of which have been produced to defendants in discovery. During these debriefs, Forster made statements about a large number of stocks with which he has been involved and/or about which he knows. As indicated in the FBI reports, Forster was part of an effort to manipulate, knew of efforts to manipulate, or suspected efforts to manipulate, most of these stocks. With respect to some of these stocks, no additional evidence was gathered during FBI-SD's investigation, with the exception in some instances of obtaining referral reports created by FINRA, a securities regulator. The FINRA reports surrounding these stocks that FBI-SD gathered have been produced to defendants in discovery.

The stocks that meet the description above include the following (Forster identified the companies by name or ticker symbol): CLOW, CYMG, FRMG, Grid Petroleum, Hondo Minerals, Ku Toor, Mercury Scheduling, LOGG, SCIO, Satel, and VTNL.

Based on the foregoing, the United States Attorney's Office is aware of actual or possible schemes surrounding these stocks, but does not have knowledge of, or direct[1] access to, additional information or evidence beyond the descriptions provided in or attached to the FBI and FINRA reports. It is the United States' position that there is no legal requirement that it canvas other offices, departments, or agencies in order to gather additional evidence (should it exist) with respect to these stocks.

---

[1] In other words, no additional materials are in the possession, custody or control of this United States Attorney's Office, or the FBI's San Diego Field Office.

### B. Historical Pump-and-Dump / Market Manipulation Schemes – Additional Evidence Gathered

During his debriefs, Forster also made statements about a number of stocks subject to actual or possible schemes about which FBI-SD obtained additional evidence. These actual or possible schemes surround the following tickers: ASNT (as alleged in *United States v. Hackett, et al.*, S.D. Cal. Case no. 18CR3072-BTM), CADY, EVTI, MNGA, SSSI, and WRIT. Additional details concerning two of these stocks is set forth below.

The EVTI scheme was the subject (along with schemes surrounding several other companies) of a specific investigation conducted by the SEC's Los Angeles Regional Office. As a result of the investigation, the SEC filed civil charges in *SEC v. Flowers*, S.D. Cal. Case no. 17CV1456-JAH. This SEC case was filed before Forster began cooperating. The SEC supplied FBI-SD with many of the documents the SEC obtained during its investigation; these documents have been produced to defendants in discovery in this case. According to Forster, and as documented in FBI reports of his interviews, Giguiere and Forster played active roles in the EVTI scheme.

SSSI was the subject of a short-lived investigation by this United States Attorney's Office over a decade ago. According to the former Assistant United States Attorney who worked on the case, the investigation took place in or around 2006. However, the prosecutor was assigned to a detail at The Hague, the investigation was closed, and the assigned FBI agents have since retired. All reports related to the investigation that contained a reference to Forster (according to a computerized search of the FBI investigative file) have been, or will soon be, produced in discovery to defendants here.

Based on the foregoing, the United States Attorney's Office is aware of actual or possible schemes surrounding these stocks, and has knowledge of, and direct access to, additional information or evidence surrounding these schemes. The evidence regarding these schemes that was gathered by FBI-SD has been produced to defendants in discovery in this case. It is the United States' position that there is no legal requirement

*United States First Suppl. Brief in R&O to Giguiere Discovery Motion*

4

*18CR3071-WQH*

that it canvas other offices, departments, or agencies in order to gather additional evidence (should it exist) with respect to these stocks.

### C. Historical Pump-and-Dump / Market Manipulation Schemes – Involvement with Defendants Giguiere and/or Lindsay

According to Forster, as well as recorded conversations, text messages and emails (which have been produced in discovery), Forster had been engaged in penny stock schemes alongside Giguiere and/or Lindsay since before he began cooperating with the United States in August 2017. A number of these apparent schemes continued after Forster began cooperating, and he gathered evidence (*e.g.*, texts, recorded telephone calls) as these schemes progressed, and as part of his cooperation. These apparent schemes involve the following tickers and companies: ADAD, AHPI, BLIN, CODX, DOGZ, EFCT, Hancock Jaffe Laboratories, PHMD, RMGN, LTEA, MOTS, MYND, QBAK, QBIO, SPLY, TCCO, and UCLE.

Based on the foregoing, the United States Attorney's Office is aware of actual or possible schemes surrounding these stocks, and has direct access to and knowledge of additional information or evidence. Evidence gathered by FBI-SD has been produced to defendants in discovery in this case. It is the United States' position that there is no legal requirement that it canvas other offices, departments, or agencies in order to gather additional evidence (should it exist) with respect to these stocks.

### D. Additional Historical Pump-and-Dump / Market Manipulation Schemes

#### 1. The Cleveland Case

As described in the United States' response in opposition to Giguiere's discovery motion, Forster received a target letter in connection with a Northern District of Ohio criminal case (the "Cleveland Criminal Case,"), *see* DEPT. OF JUSTICE PRESS RELEASE, EIGHT PEOPLE SENTENCED TO PRISON FOR PENNY-STOCK FRAUD THAT RESULTED IN $39 MILLION LOSS TO INVESTORS, Jan. 31, 2017, and an SEC civil case alleging overlapping facts, *see SEC v. Cope, et al.*, S.D.N.Y. Case No. 14CV7575 (the "New York SEC

Case"). Forster did not provide information to investigators when they approached him with the target letter, and he ultimately did not face criminal or civil charges arising from that investigation. The Cleveland Criminal Case went to trial against those who were indicted, after the United States Attorney's Office in that district produced hundreds of thousands of documents in discovery. FBI-SD has possession of a few pieces of evidence from the Cleveland Criminal Case, including a video of a conversation between a cooperator and Forster, text messages exchanged between the cooperator and Forster, and records of wire transfers between accounts belonging to the cooperator and Forster.

Based on the foregoing, the United States Attorney's Office is aware of actual or possible schemes investigated and charged as part of the Cleveland Criminal Case and the New York SEC case, and has knowledge of and direct access to a limited amount of additional information or evidence surrounding those cases. Those materials that are in the possession of FBI-SD have been, or soon will be, produced to defendants in discovery in this case. It is the United States' position that there is no legal requirement that it canvas other offices, departments, or agencies – including the USAO and/or FBI in Cleveland and the SEC – in order to gather additional evidence (should it exist) with respect to the stocks at issue in the Cleveland Case.

### 2. Cuba Beverage Company

Except as described in this paragraph, none of the investigations of market manipulation schemes in which Forster participated led to Forster's cooperation, or to filed criminal or SEC charges against him. In 2017, FBI-SD investigated a suspected market manipulation scheme in the stock of Cuba Beverage Company. In August 2017, the United States Attorney's Office charged Forster in a sealed complaint with conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, for his role in a scheme relating to the 2012 manipulation of the market for Cuba Beverage stock. When approached by FBI-SD agents, Forster agreed to cooperate, the arrest warrant was not executed, and the complaint was later dismissed without prejudice. Forster entered into a

cooperation and tolling agreement with the Government (both of which have been produced in discovery). He is cooperating with the investigation pursuant to those agreements, and has recorded conversations and captured evidence of written communications with Giguiere and Lindsay regarding the manipulation of KVMD, which led to the indictment in this case.

Based on the foregoing, the United States Attorney's Office is aware of an actual scheme surrounding Cuba Beverage stock in which Forster participated, and has direct access to and knowledge of additional information or evidence. Evidence gathered by FBI-SD has been produced to defendants in discovery in this case. It is the United States' position that there is no legal requirement that it canvas other offices, departments, or agencies in order to gather additional evidence (should it exist) with respect to Cuba Beverage Company.

E.  **Forster's Additional Proactive Cooperation**

Forster continues to cooperate with FBI investigations into recent and/or ongoing market manipulation schemes. He has done so pursuant to his cooperation agreement, and with the hope that the Government will recommend a lower sentence on account of his substantial assistance under U.S.S.G. § 5K1.1. Critically, ***none of this cooperation involves wrongdoing by Forster*** – he was introduced into these schemes by individuals working in an undercover capacity and, at the FBI's instruction, Forster pretended to analyze ongoing schemes and whether to get involved by asking questions of, and requesting information from, his would-be conspirators. Forster had no prior connection with these schemes, made no money from the schemes, and has not been compensated for his investigative efforts. Also, to FBI-SD's knowledge, none of these schemes has any connection with defendants Giguiere or Lindsay.

With the exception of *United States v. Luke Zouvas* (described below), materials gathered during these investigations have not been produced to defendants in discovery in this case. This is because disclosure of the names of the specific companies and

individuals that are the focus of these efforts may well impair the related investigations. If the subjects/targets learn of the investigation, they would likely no longer engage in the ongoing conspiracies, cease communication with Forster and other undercovers, destroy evidence, flee or hide to evade capture, and may even attempt to harm Forster and other undercovers.  Nevertheless, the United States is willing to make detailed disclosures about these schemes.   It is the United States' position that it should not be required to turn over additional information or materials (except for updates before trial regarding ongoing cooperation) because disclosure of additional details would not put defendants in a better position to present and argue Forster's bias and motivation for cooperating, but it would impair ongoing investigations.  It is also the United States' position that there is no legal requirement that it canvas other offices, departments, or agencies in order to gather additional evidence (should it exist) with respect to these stocks.

### 1.     Public Company 1

Public Company 1 ("PubCo-1") is a small company incorporated domestically in the United States.  Its stock is publicly traded on OTC Market Group, Inc.'s "Pink Open Market."  At the FBI's instruction, between January and February 2019, an individual functioning in an undercover capacity ("UC") introduced Forster, using a pseudonym, to ongoing conspiratorial discussions concerning a market manipulation / pump-and-dump scheme surrounding PubCo-1's stock.  The conspirators include multiple individuals, one of whom is an executive at PubCo-1.  Forster participated in, and captured evidence of, these communications, which included almost daily text messages, between 10 and 15 telephone calls, and approximately ten emails (some of which attached one or more documents).   The topics covered in these discussions included recurring aspects of market manipulation schemes, including: (1) the conspirators' control over Pubco-1 and its stock; (2) concealing this control, including through false and misleading disclosures in the company's public filings with OTCMarkets.com, and holding stock through nominee accounts; (3) evading the legal requirement that new public offerings of stock be

registered with the SEC; (4) coordinating corporate press releases with paid promotions (the "pump") through, *e.g.*, call rooms; and (5) the approximate share price the conspirators expected to achieve through the scheme, so that the they could sell ("dump") the shares. After capturing the evidence described above, and at the FBI's instruction, Forster terminated his purported involvement in the scheme. In the FBI's estimation, the conspirators continue in their efforts to manipulate the stock of PubCo-1.

2. **Public Company 2**

Public Company 2 ("PubCo-2") is a small company incorporated domestically in the United States. Its stock is publicly traded on the NASDAQ market. An FBI cooperator introduced Forster, using a pseudonym, and a UC to a securities broker ("Broker 1") who is under investigation. The cooperator told Broker 1 that Forster and the UC worked in the microcap stock industry. Forster and the UC then communicated with Broker 1 about PubCo-2 in two telephone calls, and approximately 20 emails (some of which attached one or more documents). Forster and the UC told Broker 1 that they owned significant blocks of PubCo-2 stock – this was a ruse, as neither Forster nor the UC owned this stock. The topics covered in these discussions included recurring aspects of market manipulation schemes, including: (1) Forster's and the UC's purported control over Pubco-2 and its stock; (2) concealing this control, including by holding stock through nominee accounts; (3) evading the legal requirements that new public offerings of stock be registered with the SEC; and (4) Broker 1's cut of the proceeds upon sale of the PubCo-2 stock that Broker 1 was to receive in exchange for facilitating the scheme. After capturing the evidence described above, and at the FBI's instruction, Forster terminated his purported involvement in the scheme. The investigation into Broker 1 and his co-conspirators continues.

3. **Public Company 3**

Public Company 3 ("PubCo-3") is a small company incorporated domestically in the United States. Its stock is publicly traded on OTC Market Group, Inc.'s "Pink Open

Market."  A UC had been in discussions with a target about promoting (*i.e.*, pumping) various stocks.  In early 2018, the UC introduced Forster (using a pseudonym) into the conversation and, at the direction of the FBI, Forster identified up to five stocks, one of which was PubCo-3, that Forster and the UC purportedly wanted to be promoted.  The target expressed an interest in promoting PubCo-3, but was not interested in the other stocks.  Forster and the UC communicated with the target about PubCo-3 in less than five telephone calls, and approximately 30-40 emails and/or text messages from early-2018 through mid-2018.  The topics covered in these discussions included recurring aspects of market manipulation schemes, including: (1) attracting attention to PubCo-3's stock through, *inter alia*, false and misleading press releases; (2) expectations about the price and trading volume in PubCo-3's stock that might result from the target's efforts; and (3) the target's compensation, in the form of shares of PubCo-3's stock, that the target was to receive in exchange for facilitating the scheme.  After capturing the evidence described above, and at the FBI's instruction, Forster terminated his purported involvement in the scheme.  The investigation into the target and his co-conspirators continues.

### 4. Private Company 1

Private Company 1 ("PrivCo-1") is a small company incorporated domestically in the United States.  Its stock is not publicly traded.  A UC has had discussions with a target about taking PrivCo-1 public, *i.e.*, making an offering of PrivCo-1's stock to the public.  The UC introduced Forster, using a pseudonym, into the discussions. Specifically, Forster participated in a single in-person meeting with the target in late-2018, and has exchanged less than five emails with the target between late-2018 and the date of this filing.  Among the topics discussed during these communications were common aspects of pump-and-dump / market manipulation schemes, including: (1) the manner by which to take PrivCo-1 public; (2) Forster's and the UC's purported control over PrivCo-1 and its stock; (3) concealing this control over PrivCo-1, including through false and misleading disclosures in the company's public filings, and holding stock

through nominee accounts; (4) false and misleading disclosures about the company's financial performance; and (5) how to avoid regulatory scrutiny. The investigation is still active, and Forster continues to gather evidence.

### 5. Additional Potential Stock Manipulation

The FBI is actively analyzing opportunities to utilize Forster and his skill set to further additional investigations. The United States is prepared to make more specific disclosures with respect to such cooperation shortly after Forster terminates his purported participation in the scheme(s), which will be well in advance of trial. Forster has not yet been introduced into these conspiratorial discussions.

### 6. United States v. Luke Zouvas

In July 2018, a grand jury sitting in this district handed down an indictment in *United States v. Zouvas*, S.D. Cal. Case No. 18CR3070-JLS. The indictment charges Zouvas under the money laundering sting provision, codified at 18 U.S.C. § 1956(a)(3)(B). A significant portion of the evidence developed in that case consisted of Forster's recorded calls with Zouvas. Zouvas pleaded guilty on December 10, 2018, and his sentencing hearing is currently calendared for May 10, 2019. The evidence surrounding Mr. Forster's participation in the investigation soon will be produced in discovery.

# III

# CONCLUSION

Based on the facts stated above, and the legal standards set forth in the United States' response and opposition to Giguiere's discovery motion, the Court should deny Giguiere's discovery motion, unless otherwise noted.

DATED: March 25, 2019.

Respectfully submitted,

ROBERT S. BREWER, JR.
United States Attorney

*/s/ Aaron P. Arnzen*

AARON P. ARNZEN
ANDREW J. GALVIN
Assistant U.S. Attorneys

*United States First Suppl. Brief in R&O to Giguiere Discovery Motion*

12

*18CR3071-WQH*